HALL GRIFFIN LLP
HOWARD D. HALL, State Bar No. 145024
  *hhall@hallgriffin.com*
VALERIE J. SCHRATZ, State Bar No. 272418
  *vschratz@hallgriffin.com*
ELENA A. LEONARD, State Bar No. 303838
  *eleonard@hallgriffin.com*
1851 East First Street, 10th Floor
Santa Ana, California 92705-4052
Telephone: (714) 918-7000
Facsimile: (714) 918-6996

Attorneys for Creditor/Movant
NATIONSTAR MORTGAGE LLC

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA, SANTA ANA DIVISION

| | |
|---|---|
| In re: Hans Nearhoff, Debtor | CASE NO. 8:17-bk-13818-ES |
| | Chapter 13 |
| | JUDGE:  Hon. Erithe A. Smith<br>CTRM:  5A |
| | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR RELIEF FROM STAY AND *IN REM* ORDER** |
| | DATE:    June 21, 2018<br>TIME:    10:00 a.m.<br>CRTRM.:  5A |

### MEMORANDUM OF POINTS AND AUTHORITIES

## I.      INTRODUCTION

        This bankruptcy petition is part of a thinly veiled fraudulent scheme employed by Debtor Mr. Hans Nearhoff ("Debtor") in an effort to stop the foreclosure on his second home which Debtor admits he does not occupy. *See* Doc. no. 8 at p. 2. Despite the fact that Debtor has failed to make any mortgage payments for several years and has filed two unsuccessful lawsuits already, Debtor now seeks to indefinitely delay foreclosure of his second home by way of this bankruptcy. The sole purpose of filing of this bankruptcy petition is to stop foreclosure so Debtor can keep the property rent-free and mortgage-free

HALL GRIFFIN

1    at the expense of his creditor Nationstar Mortgage LLC ("Nationstar"). Debtor's

2    fraudulent transfers, the timing of his bankruptcy filing and his multiple threats of

3    bankruptcy to Nationstar's counsel paint a picture of a sham bankruptcy. Clearly, Debtor

4    will do anything to keep this house instead of moving into one of the other two properties

5    that he owns. The automatic stay protections do not apply to fraudulent filings such as this

6    one and thus, the Creditors should be relieved from the stay.

7    **II.    Factual Background**

8        On or about September 19, 2003, Debtor obtained a loan in the amount of $395,200

9    (the "Loan") to purchase the real property located at 2495 Tequestra #18, Tustin,

10   California 92782 (the "Subject Property"). *See* a true and correct copy of the Deed of

11   Trust recorded on September 25, 2003 attached hereto as Exhibit "1" and a true and correct

12   copy of the Note dated September 19, 2003, attached hereto as Exhibit "2". The Loan was

13   secured by a Deed of Trust recorded against the Subject Property on September 25, 2003.

14   *See id.* Nationstar is the current servicer for the beneficiary of the Deed of Trust, The

15   Bank of New York Mellon fka The Bank of New York as Trustee for the

16   Certificateholders of CWMBS, Inc., CHL Mortgage Pass-Through Trust 2003-56,

17   Mortgage Pass-Through Certificates, Series 2003-56 ("BNYM"). *See* a true and correct

18   copy of the Assignment of Deed of Trust attached hereto as Exhibit "3"; Doc. no. 18 at p.

19   16.

20       Once Debtor stopped making payments on the Loan pursuant to the Deed of Trust,

21   Nationstar initiated non-judicial foreclosure proceedings. *See* a true and correct copy of

22   the Notice of Default recorded on January 13, 2015 attached hereto as Exhibit "4" and a

23   true and correct copy of the Notice of Trustee's Sale recorded on May 19, 2017 attached

24   hereto as Exhibit "5".

25       On July 29, 2015, Debtor filed a complaint against Nationstar and BNYM seeking

26   to stop foreclosure proceedings and invalidate various foreclosure notices, among other

27   relief that he requested (the "First Lawsuit"). The First Lawsuit was filed in the Superior

28   Court of Orange County, entitled *Hans Nearhoof v. Nationstar Mortgage LLC, et al.*, case

HALL GRIFFIN

Case No. 8:17-bk-13818
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR RELIEF FROM STAY AND IN REM ORDER
P:\DOCS\Nationstar.Nearhoof (Refile)\Pleadings\Motion for Relief from Stay.docx

1  number 30-2015-00801628-CU-OR-CJC. *See* Declaration of Elena A. Leonard ("Leonard

2  Decl."), ¶ 2.

3      On April 19, 2016, Debtor transferred the Subject Property to Eastwood Group LLC

4  without Nationstar's consent.  The Deed states that "Grantors and Grantees in this

5  conveyance continue to hold the same proportionate ownership interest in this property".

6  *See* a true and correct copy of the Grant Deed recorded on April 19, 2016 attached hereto

7  as Exhibit "6".

8      On November 10, 2016, Debtor filed a Request for Dismissal of the First Lawsuit

9  without prejudice and the Court entered a Dismissal on November 10, 2016.  *See* Leonard

10  Decl., ¶ 3.

11      On June 20, 2017, Debtor filed his second lawsuit against Nationstar and BNYM,

12  again to attempt to stop the impending foreclosure (the "Second Lawsuit").  The Second

13  Lawsuit was filed in the Superior Court of Orange County, entitled *Hans Nearhoof v.*

14  *Nationstar Mortgage LLC, et al.*, case number 30-2017-00927329-CU-OR-CJC. *See*

15  Leonard Decl., ¶ 4.

16      On July 6, 2017, Nationstar's counsel Elena Leonard ("Ms. Leonard") spoke with

17  Debtor's attorney Mr. GianDominic Vitiello ("Mr. Vitiello") to discuss an upcoming

18  hearing on Debtor's request for a preliminary injunction and a potential out-of-court

19  resolution of the case. *See* Leonard Decl., ¶ 5.  During this telephone call, Mr. Vitiello

20  stated that if he were to lose the preliminary injunction hearing, Debtor would file for

21  bankruptcy to stop the foreclosure sale. *See id.*

22      On July 11, 2017, the Court held a hearing on Debtor's request for a preliminary

23  injunction in the Second Lawsuit. *See* Leonard Decl., ¶ 6.  The Judge denied Debtor's

24  application and noted that there was a strong suggestion of Debtor having "unclean hands"

25  and being dishonest. *See id.*

26      In light of Debtor's loss at the July 11, 2017 hearing and because he previously

27  threatened a bankruptcy action, Nationstar's counsel once again suggested an out-of-court

28  settlement to resolve this litigation. *See* Leonard Decl., ¶ 7.

HALL GRIFFIN

1    On August 31, 2017, Nationstar's attorneys were contacted by a man by the name

2    of John Edwards who claimed to be taking over representation of Debtor. *See* Leonard

3    Decl., ¶ 8.  Once again, Debtor's counsel has threatened a bankruptcy filing so that the

4    upcoming foreclosure would be delayed. *See id.*

5    While the parties' were in settlement discussions, on September 18, 2018, Mr.

6    Vitiello advised Nationstar's counsel that Debtor has instructed him to file a request for

7    dismissal of the Second Lawsuit without prejudice. *See* Leonard Decl., ¶ 9.  The Court

8    entered a Dismissal on September 18, 2017. *See id.*

9    On September 21, 2017, Eastwood Group LLC transferred the Subject Property

10   back to Debtor without Nationstar's consent.  The Deed states that "the grantors and the

11   grantees in this conveyance are comprised of the same parties who continue to hold the

12   same proportionate interest in this property".  Importantly, the Deed was signed by Debtor

13   as agent for Eastwood Group LLC. *See* a true and correct copy of the Grant Deed recorded

14   on September 29, 2017 attached hereto as Exhibit "7".

15   In a last attempt to delay foreclosure, on September 25, 2017, Debtor filed for

16   Chapter 13 bankruptcy protection for the sole purpose of delaying the sale. *See* Doc. No.

17   1.  The timing of the bankruptcy is highly questionable as it was filed just four days after

18   the suspicious transfer of the Subject Property to Debtor and just two days before the

19   scheduled foreclosure on September 27, 2017. *See* a true and correct copy of the Grant

20   Deed recorded on September 29, 2017 attached hereto as Exhibit "7" and Doc. No. 1.

21   Especially concerning is the fact that Debtor did not inform the Creditors' of this

22   bankruptcy filing ***until the day of the foreclosure sale***. *See* Leonard Decl., ¶ 10.  Further

23   suspicious is the fact that Debtor's name was misspelled as "Nearhoff" when the

24   bankruptcy petition was originally filed. *See* Docket.

25   Because there was insufficient time to stop the foreclosure, the sale went forward on

26   September 27, 2017. *See* Leonard Decl., ¶ 10.  However, upon learning of this bankruptcy

27   filing, Nationstar has rescinded the foreclosure sale. *See id.*

28   / / /

HALL GRIFFIN

**III.** **Nationstar Is the Victim of a Scheme Involving the Fraudulent Transfer of the**

**Subject Property; Permitting this Court to Grant *In Rem* Relief from**

**Automatic Stay in Order to Address Debtor's Fraudulent Scheme**

11 U.S.C. § 362(d)(4) was added to the Bankruptcy Code as part of the Bankruptcy

Abuse Prevention and Consumer Protection Act of 2005, and provides in pertinent part:

> (d) On request of a party in interest and after notice and a
> hearing, the court shall grant relief from the stay provided
> under subsection (a) of this section, such as by terminating,
> annulling, modifying, or conditioning such stay –
>
> ***
>
> (4) with respect to a stay of an act against real property under
> subsection (a), by a creditor whose claim is secured by an
> interest in such real property, if the court finds that the filing of
> the petition was part of a scheme to delay, hinder, or defraud
> creditors that involved either –
>
> (A) transfer of all or part ownership of, or other interest in,
> such real property without the consent of the secured creditor
> or court approval; or
>
> (B)    multiple bankruptcy filings affecting such real property.

"When a court grants relief from the automatic stay pursuant to 11 U.S.C. §

362(d)(4), it gives creditors *in rem* relief from the automatic stay such that the order is

binding in any bankruptcy case filed in the next two years purporting to affect the same

real property." *In re Dana Dorsey*, 476 B.R. 261, 265 (Bankr. C.D. Cal. 2012) (hereinafter

"Dorsey").  The presence of the following three elements is required to obtain relief under

Section 362(d)(4): "First, debtor's bankruptcy filing must have been part of a scheme.

Second, the object of the scheme must be to delay, hinder or defraud creditors.  Third, the

scheme must involve either (a) the transfer of some interest in the real property without the

secured creditor's consent or court approval, or (b) multiple bankruptcy filings affecting

the property." *In re First Yorkshire Holdings, Inc.*, 470 B.R. 864, 870 (9th Cir. B.A.P.

2012); *Dorsey*, *supra*.

Section 362(d)(4) was enacted to address precisely the scheme at issue in this

Motion and more than ample evidence exists establishing each of the three elements

required to obtain *in rem* relief.

HALL GRIFFIN

**A.**   **The Timing and Other Circumstances Surrounding the Bankruptcy Clearly Portray the Existence of a Scheme**

The Central District has interpreted a "scheme" to mean "a plan adopted for the nefarious purposes specified in the statute: to delay, hinder and defraud creditors." *In re Duncan & Forbes Development, Inc.*, 368 B.R. 27, 32 (Bankr. C.D. Cal. 2006). Importantly, "[i]t is not common to not have direct evidence of an artful plot or plan to deceive others, In general, the court must infer the existence and contents of a scheme from circumstantial evidence." *Id.*

Here, the scheme that Debtor employs and implements is readily inferred from the above-described facts. It is clear that Debtor would stop at nothing to avoid the foreclosure sale on the Subject Property. Here, Debtor has filed not one, but two, unsuccessful lawsuits against Nationstar for the sole purpose of delaying foreclosure. *See* Leonard Decl., ¶¶ 2 & 4. This is evident from the fact that Debtor dismissed the Second Lawsuit as soon as he learned that he would not be able to stop the foreclosure by way of the preliminary injunction. *See id.*, ¶ 9. In fact, the Judge at the preliminary injunction hearing saw through Debtor's delay tactics as he observed that there was a strong suggestion of Debtor having "unclean hands" and being dishonest. *See id.*, ¶ 6.

As Debtor was unable to manipulate the Judge into another delay, he turned to another delay tactic – bankruptcy. Especially disturbing is the fact that Debtor did not even attempt to conceal his true motives for this bankruptcy filing as his counsel has threatened Nationstar with bankruptcy on ***multiple occasions*** with explicit explanation that the filing would be done solely to delay the sale. *See* Leonard Decl., ¶¶ 5 & 8.

Further suspicious is the fact that when Debtor originally filed his bankruptcy petition, he misspelled his own name as "Nearhoff" which suggests a hasty filing on the brink of the foreclosure sale for one purpose only – to stop the sale. *See* Docket.

Moreover, the scheme is further evident from the highly suspicious transfers of the Subject Property to Eastwood Group LLC during the pendency of the First Lawsuit and a transfer of the Subject Property back to Debtor just a few days before the scheduled

HALL GRIFFIN

Case No. 8:17-bk-13818

1  foreclosure and this bankruptcy filing. *See* Exs. 6 & 7 attached hereto. The timing of

2  these transfers suggest that they were done in bad faith. Furthermore, these deeds state

3  that "the grantors and the grantees in this conveyance are comprised of the same parties

4  who continue to hold the same proportionate interest in this property", which is an

5  additional evidence of a fraudulent transfer for the sole purpose of delaying foreclosure.

6  *See id.* Additionally, Debtor signed all conveyances, essentially transferring the Subject

7  Property to himself solely to avoid creditors. *See id.*

8      All of the above is compelling evidence of the existence of a "scheme" within the

9  meaning of 11 U.S.C. § 362(d)(4). Accordingly, the first element for in rem relief is

10  satisfied.

11      **B.    The Object of the Scheme Was to Delay, Hinder or Defraud Nationstar**

12      As discussed above, Debtor's attorneys have admitted on ***multiple occasions*** that

13  the bankruptcy filing was for the sole purpose of delaying the foreclosure and thus,

14  defrauding Nationstar. *See* Leonard Decl., ¶¶ 5& 8. As such, the second element for

15  obtaining in rem relief is satisfied.

16      **C.    The Scheme Included the Transfer of Part Ownership of Interest in the**

17      **Subject Property Without the Consent of Nationstar**

18      The final element for in rem relief requires "that the scheme included either (A)

19  transfer of all or part ownership of, or other interest in, such real property without the

20  consent of the secured creditor or court approval or (B) multiple bankruptcy filings

21  affecting such real property." *In re Dorsey, supra* at 268-269.

22      First, as part of his years-long delay scheme, Debtor transferred the Subject

23  Property to Eastwood Group LLC on April 19, 2016. *See* Ex. 6 attached hereto. This

24  action occurred without the consent of Nationstar and BNYM, who are the secured

25  creditors under the Deed of Trust for the Subject Property. Second, just a few days before

26  he filed this bankruptcy petition and the scheduled foreclosure sale, Eastwood Group LLC

27

28

HALL GRIFFIN

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR RELIEF FROM STAY AND IN REM ORDER
P:\DOCS\Nationstar.Nearhoof (Refile)\Pleadings\Motion for Relief from Stay.docx

1  transferred the Subject Property back to Debtor.[1]  *See* Ex. 7 attached hereto.  This second

2  transfer has also occurred without the consent of Nationstar and BNYM.  Accordingly,

3  these highly suspicious transfers of the Subject Property are sufficient to satisfy the third

4  and final element for obtaining in rem relief.

5  **IV.**    **CONCLUSION**

6        Debtor's actions cannot be described as anything other than a complete abuse of the

7  bankruptcy process, by which Debtor gained the protections of the automatic stay through

8  fraudulent means.  With each of the three elements for in rem relief having been satisfied,

9  Nationstar requests that this Court grant its Motion for Relief from the Automatic Stay

10  under 11 U.S.C. § 362(d)(4)(b), including the issuance of in rem relief.

11

12  DATED: May 23, 2018            HALL GRIFFIN LLP

13

14

15                        By: _____

16                            Howard D. Hall
                            Valerie J. Schratz
                            Elena A. Leonard

17                        Attorneys for Creditor/Movant NATIONSTAR
                            MORTGAGE LLC

18

19

20

21

22

23

24

25

26

27

28  [1] As discussed above, Debtor signed the Grant Deed.

# EXHIBIT 1

**RECORDED AT THE REQUEST OF CHICAGO TITLE COMPANY**

Recording Requested By:
B. TYLER

Recorded in Official Records, County of Orange

Tom Daly, Clerk-Recorder

| | 58.00 |

**2003001177810 01:30pm 09/25/03**

104 15 D11 27

0.00 0.00 0.00 0.00 52.00 0.00 0.00 0.00

After Recording Return To:
COUNTRYWIDE HOME LOANS, INC.

MS SV-79 DOCUMENT PROCESSING
P.O.Box 10423
Van Nuys, CA 91410-0423

Prepared By:
MILES EVALLE

3857-2731-807

[Space Above This Line For Recording Data]

001247-GB                           0003788691709003

[Escrow/Closing #]                  [Doc ID #]

# DEED OF TRUST

MIN 1000157-0002913365-5

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A) "Security Instrument"** means this document, which is dated SEPTEMBER 19, 2003 , together with all Riders to this document.

**(B) "Borrower"** is

HANS NEARHOOF, A SINGLE MAN

**CALIFORNIA**-Single Family-Fannie Mae/Freddie Mac **UNIFORM INSTRUMENT WITH MERS**

Page 1 of 16

Initials:

-6A(CA) (0207)    CHL (09/02)(d)    VMP MORTGAGE FORMS - (800)521-7291    Form 3005 1/01
CONV/VA

* 23991 *

* 0 3 7 8 8 6 9 1 7 0 0 0 0 0 1 0 0 6 A *

DOC ID #: 0003788691709003

Borrower's address is
2960 CHAMPION WAY #1804, TUSTIN, CA 92782
Borrower is the trustor under this Security Instrument.
**(C) "Lender"** is
COUNTRYWIDE HOME LOANS, INC.
Lender is a CORPORATION
organized and existing under the laws of NEW YORK
Lender's address is
4500 Park Granada, Calabasas, CA 91302-1613
**(D) "Trustee"** is
CTC REAL ESTATE SERVICES, A CALIFORNIA CORPORATION
155 NO, LAKE AVE., PASADENA, CALIFORNIA 91109 , .
**(E) "MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the beneficiary under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
**(F) "Note"** means the promissory note signed by Borrower and dated SEPTEMBER 19, 2003 . The Note states that Borrower owes Lender
THREE HUNDRED NINETY FIVE THOUSAND TWO HUNDRED and 00/100

Dollars (U.S. $ 395,200.00             ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than OCTOBER 01, 2033 .
**(G) "Property"** means the property that is described below under the heading "Transfer of Rights in the Property."
**(H) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.
**(I) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| [X] Adjustable Rate Rider | [X] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [ ] Planned Unit Development Rider | [ ] 1-4 Family Rider |
| [ ] VA Rider | [ ] Biweekly Payment Rider | [ ] Other(s) [specify] |

**(J) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.
**(K) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.
**(L) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.
**(M) "Escrow Items"** means those items that are described in Section 3.
**(N) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii)

(VMP) -6A(CA) (0207)          CHL (09/02)          Page 2 of 16          Initials: _____          Form 3005 1/01

DOC ID #: 0003788691709003

conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(O) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(P) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(Q) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(R) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the
COUNTY                              of                     ORANGE                    :
　　[Type of Recording Jurisdiction]                       [Name of Recording Jurisdiction]
SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF.

Parcel ID Number: 00000001                              which currently has the address of
                      2495 TEQUESTA #18, TUSTIN                                      ,
                                            [Street/City]
California      92782      ("Property Address"):
          [Zip Code]

　　TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including,

Initials: _____

⑥ -6A(CA) (0207)      CHL (09/02)      Page 3 of 16      Form 3005 1/01

DOC ID #: 0003788691709003

but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

| | | |
|---|---|---|
| 6A(CA) (0207) | CHL (09/02) | Page 4 of 16 |

Initials:

Form 3005   1/01

DOC ID #: 0003788691709003

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

-6A(CA) (0207)        CHL (09/02)        Page 5 of 16        Initials: ____        Form 3005  1/01

Case 8:17-bk-13018-ES Doc 54-1 Filed 05/24/18 Entered 05/24/18 14:14:46 Desc
Memorandum of Points and Authorities in Support of Motion Page 15 of 63

Branch ::8:17-bk-13018-ES

DOC ID #: 0003788691709003

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of

-6A(CA) (0207)     CHL (09/02)          Page 6 of 16                    Initials: [signature]    Form 3005 1/01

DOC ID #: 0003788691709003

paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

-6A(CA) (0207)          CHL (09/02)          Page 7 of 16          Initials: _____   Form 3005 1/01

DOC ID #: 0003788691709003

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower

-6A(CA) (0207)    CHL (09/02)    Page 8 of 16    Initials: _____    Form 3005 1/01

DOC ID #: 0003788691709003

shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

**(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.**

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security

VMP®-6A(CA) (0207)        CHL (09/02)        Page 9 of 16        Initials: _____

Form 3005 1/01

DOC ID #: 0003788691709003

Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

-6A(CA) (0207)        CHL (09/02)            Page 10 of 16                    Initials:            Form 3005  1/01

DOC ID #: 0003788691709003

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

-6A(CA) (0207)   CHL (09/02)          Page 11 of 16          Initials: _____   Form 3005 1/01

DOC ID #: 0003788691709003

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in

@ -6A(CA) (0207)          CHL (09/02)          Page 12 of 16          Initials: _____          Form 3005  1/01

DOC ID #: 0003788691709003

compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

(VMP) -6A(CA) (0207)          CHL (09/02)          Page 13 of 16          Initials: _____ Form 3005 1/01

DOC ID #: 0003788691709003

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

**23. Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

**24. Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

**25. Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

-6A(CA) (0207)        CHL (09/02)            Page 14 of 16            Initials: _____ Form 3005 1/01

DOC ID #: 0003788691709003

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____          _____ (Seal)
                                          HANS NEARHOOF                    -Borrower

_____          _____ (Seal)
                                                                           -Borrower

                                          _____ (Seal)
                                                                           -Borrower

                                          _____ (Seal)
                                                                           -Borrower

-6A(CA) (0207)        CHL (09/02)          Page 15 of 16                    Form 3005  1/01

DOC ID #: 0003788691709003

State of California
County of Orange } ss.

On September 22, 2003 before me, Gloria J. Berky
personally appeared

Hans Nearhoof

, personally known to me
(or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to
the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized
capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of
which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

_____ (Seal)



GLORIA J. BERKEY
Comm. # 1240918
NOTARY PUBLIC - CALIFORNIA
Orange County
My Comm. Expires Dec. 3, 2003

⊛-6A(CA) (0207)        CHL (09/02)        Page 16 of 16        Initials: ___   Form 3005  1/01

Prepared by: MILES EVALLE

**COUNTRYWIDE HOME LOANS, INC.**

Branch #: 0000100
2500 E. IMPERIAL HWY., #198
BREA, CA 92821
Phone: (714)255-8300
Br Fax No.: (714)255-8495

**DATE:** 09/19/2003
**CASE #:**
**DOC ID #:** 0003788691709003
**BORROWER:** HANS NEARHOOF
**PROPERTY ADDRESS:** 2495 TEQUESTRA #18
TUSTIN, CA 92782

### LEGAL DESCRIPTION EXHIBIT A

FHA/VA/CONV
- Legal Description Exhibit A
1C404-XX (04/03)(d)





After Recording Return To:
COUNTRYWIDE HOME LOANS, INC.
MS SV-79 DOCUMENT PROCESSING
P.O.Box 10423
Van Nuys, CA 91410-0423

——————————— [Space Above This Line For Recording Data] ———————————

# CONDOMINIUM RIDER

Prepared By:
MILES EVALLE

001247-GB                    0003788691709003
[Escrow/Closing #]              [Doc ID #]

**MULTISTATE CONDOMINIUM RIDER**-Single Family-**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**
Page 1 of 3                                                          Initials:
ⓋⓂⓅ -8R (0008).02    **CHL (12/01)(d)**    VMP MORTGAGE FORMS - (800)521-7291          **Form 3140 1/01**
CONV/VA



* 2 3 9 9 1 *              * 0 3 7 8 8 6 9 1 7 0 0 0 0 0 1 0 0 8 R *

DOC ID #: 0003788691709003

THIS CONDOMINIUM RIDER is made this NINETEENTH        day of SEPTEMBER, 2003, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed  (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Note to
COUNTRYWIDE HOME LOANS, INC.
(the "Lender") of the same date and covering the Property described in the Security Instrument and located at:
2495 TEQUESTRA #18, TUSTIN, CA 92782

[Property Address]

The Property includes a unit in, together with an undivided interest in the common elements of, a condominium project known as:

CORTE VILLA

[Name of Condominium Project]

(the "Condominium Project"). If the owners association or other entity which acts for the Condominium Project (the "Owners Association") holds title to property for the benefit or use of its members or shareholders, the Property also includes Borrower's interest in the Owners Association and the uses, proceeds and benefits of Borrower's interest.

**CONDOMINIUM COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. Condominium Obligations.** Borrower shall perform all of Borrower's obligations under the Condominium Project's Constituent Documents. The "Constituent Documents" are the: (i) Declaration or any other document which creates the Condominium Project; (ii) by-laws; (iii) code of regulations; and (iv) other equivalent documents. Borrower shall promptly pay, when due, all dues and assessments imposed pursuant to the Constituent Documents.

**B. Property Insurance.** So long as the Owners Association maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy on the Condominium Project which is satisfactory to Lender and which provides insurance coverage in the amounts (including deductible levels), for the periods, and against loss by fire, hazards included within the term "extended coverage," and any other hazards, including, but not limited to, earthquakes and floods, from which Lender requires insurance, then: (i) Lender waives the provision in Section 3 for the Periodic Payment to Lender of the yearly premium installments for property insurance on the Property; and (ii) Borrower's obligation under Section 5 to maintain property insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.

What Lender requires as a condition of this waiver can change during the term of the loan.

Borrower shall give Lender prompt notice of any lapse in required property insurance coverage provided by the master or blanket policy.

In the event of a distribution of property insurance proceeds in lieu of restoration or repair following a loss to the Property, whether to the unit or to common elements, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender for application to the sums secured by the Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

-8R (0008).02        CHL (12/01)                    Page 2 of 3

Initials:

Form 3140  1/01

DOC ID #: 0003788691709003

**C. Public Liability Insurance.** Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

**D. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property, whether of the unit or of the common elements, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Section 11.

**E. Lender's Prior Consent.** Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the Condominium Project, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of the Constituent Documents if the provision is for the express benefit of Lender; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

**F. Remedies.** If Borrower does not pay condominium dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this Condominium Rider.

_____ (Seal)
HANS NEARHOOF                                 - Borrower

_____ (Seal)
                                              - Borrower

_____ (Seal)
                                              - Borrower

_____ (Seal)
                                              - Borrower

-8R (0008).02        CHL (12/01)              Page 3 of 3              Form 3140  1/01

DOC ID #: 0003788691709003

State of California

County of _Orange_____ }

On _Sept. 22, 2003_ before me, _Gloria J. Berky_

personally appeared _Hans Nearhuof_

_____

_____

personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.



GLORIA J. BERKEY
Comm. # 1240918
NOTARY PUBLIC - CALIFORNIA
Orange County
My Comm. Expires Dec. 3, 2003

WITNESS my hand and official seal.

Signature _____

GLORIA J. BERKEY
Comm. # 1240918
NOTARY PUBLIC - CALIFORNIA
Orange County
My Comm. Expires Dec. 3, 2003

California  Acknowledgemnt

1C452-CA  (03/01)(d)

Assessor's Parcel Number:

After Recording Return To:
COUNTRYWIDE HOME LOANS, INC.


MS SV-79 DOCUMENT PROCESSING
P.O.Box 10423
Van Nuys, CA 91410-0423
Prepared By:
MILES EVALLE
Recording Requested By:

──────────── **[Space Above This Line For Recording Data]** ────────────

# FIXED/ADJUSTABLE RATE RIDER
**(LIBOR One-Year Index (As Published In *The Wall Street Journal*) - Rate Caps)**

001247-GB            0003788691709003
[Escrow/Closing #]      [Doc ID #]

CONV
● MULTISTATE FIXED/ADJUSTABLE RATE RIDER - WSJ One-Year LIBOR - Single Family
  INTEREST ONLY
1U796-XX (06/03)(d)          Page 1 of 4          Initials:



* 2 3 9 9 1 *          * 0 3 7 8 8 6 9 1 7 0 0 0 0 1 U 7 9 6 *

DOC ID #: 0003788691709003

THIS FIXED/ADJUSTABLE RATE RIDER is made this NINETEENTH    day of
SEPTEMBER, 2003, and is incorporated into and shall be deemed to amend and supplement the
Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the
undersigned ("Borrower") to secure Borrower's Fixed/Adjustable Rate Note (the "Note") to
COUNTRYWIDE HOME LOANS, INC.

("Lender") of the same date and covering the property described in the Security Instrument and located at:

2495 TEQUESTRA #18
TUSTIN, CA 92782
[Property Address]

**THE NOTE PROVIDES FOR A CHANGE IN BORROWER'S FIXED INTEREST
RATE TO AN ADJUSTABLE INTEREST RATE. THE NOTE LIMITS THE
AMOUNT BORROWER'S ADJUSTABLE INTEREST RATE CAN CHANGE AT
ANY ONE TIME AND THE MAXIMUM RATE BORROWER MUST PAY.**

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:
**A. ADJUSTABLE RATE AND MONTHLY PAYMENT CHANGES**
The Note provides for an initial fixed interest rate of    5.375 %. The Note also provides for
a change in the initial fixed rate to an adjustable interest rate, as follows:
**4. ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES**
**(A) Change Dates**
The initial fixed interest rate I will pay will change to an adjustable interest rate on the
first        day of OCTOBER, 2013    , and the adjustable interest rate I will pay
may change on that day every 12th month thereafter. The date on which my initial fixed interest rate changes to
an adjustable interest rate, and each date on which my adjustable interest rate could change, is called a "Change
Date."
**(B) The Index**
Beginning with the first Change Date, my adjustable interest rate will be based on an Index. The "Index" is
the average of interbank offered rates for one year U.S. dollar-denominated deposits in the London market
("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the date 45
days before each Change Date is called the "Current Index".
If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable
information. The Note Holder will give me notice of this choice.
**(C) Calculation of Changes**
Before each Change Date, the Note Holder will calculate my new interest rate by adding
TWO & ONE-QUARTER        percentage points (    2.250 %) to the Current Index.
the Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point
(0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate
until the next Change Date.
The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay
the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new
interest rate in substantially equal payments. The result of this calculation will be the new amount of my
monthly payment.

CONV
● MULTISTATE FIXED/ADJUSTABLE RATE RIDER - WSJ One-Year LIBOR - Single Family
  INTEREST ONLY
1U796-XX (06/03)                Page 2 of 4                    Initials:

DOC ID #: 0003788691709003

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than    10.375 % or less than    2.250    %. Thereafter, my adjustable interest rate will never be increased or decreased on any single Change Date by more than two percentage points from the rate of interest I have been paying for the preceding 12 months. My interest rate will never be greater than    10.375 %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my initial fixed interest rate to an adjustable interest rate and of any changes in my adjustable interest rate before the effective date of any change. The notice will include the amount of my monthly payment, any information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

1. Until Borrower's initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section A above, Uniform Covenant 18 of the Security Instrument shall read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

2. When Borrower's initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section A above, Uniform Covenant 18 of the Security Instrument described in Section B1 above shall then cease to be in effect, and the provisions of Uniform Covenant 18 of the Security Instrument shall be amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

CONV
- MULTISTATE FIXED/ADJUSTABLE RATE RIDER - WSJ One-Year LIBOR - Single Family
  INTEREST ONLY
1U796-XX (06/03)                    Page 3 of 4

Initials:

DOC ID #: 0003788691709003

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Fixed/Adjustable Rate Rider.

_____ (Seal)
HANS NEARHOOF                    -Borrower

_____ (Seal)
                                 -Borrower

_____ (Seal)
                                 -Borrower

_____ (Seal)
                                 -Borrower

CONV
● MULTISTATE FIXED/ADJUSTABLE RATE RIDER - WSJ One-Year LIBOR - Single Family
  INTEREST ONLY
1U796-XX (06/03)                    Page 4 of 4

EXHIBIT "A"

Page  1                                    DESCRIPTION
Order No. 38572731

PARCEL 1:

UNIT NO. 18, IN THE CITY OF TUSTIN, COUNTY OF ORANGE, STATE OF CALIFORNIA,
CONSISTING OF CERTAIN AIRSPACE AND SURFACE ELEMENTS, AS SHOWN AND DESCRIBED IN
THE CONDOMINIUM PLAN (PLAN) FOR PHASE 1 OF CORTE VILLA, WHICH PLAN WAS RECORDED
OCTOBER 25, 1990 AS INSTRUMENT NO. 90-568251 OF OFFICIAL RECORDS OF ORANGE
COUNTY, CALIFORNIA.

PARCEL 2:

AN UNDIVIDED ONE/TWENTY-EIGHTH (1/28TH) FEE SIMPLE INTEREST AS A TENANT IN
COMMON IN AND TO ALL OF THE REAL PROPERTY, INCLUDING WITHOUT LIMITATION THE
COMMON AREA DEFINED IN THE DECLARATION OF COVENANTS, CONDITIONS AND RESTRICTIONS
AND RESERVATION OF EASEMENTS FOR CORTE VILLA (DECLARATION), RECORDED OCTOBER 25,
1990 AS INSTRUMENT NO. 90-568250 OF OFFICIAL RECORDS OF ORANGE COUNTY,
CALIFORNIA, IN LOT 1 OF TRACT NO. 13796, AS SHOWN ON A MAP RECORDED IN BOOK 650,
PAGES 43 TO 47 INCLUSIVE OF MISCELLANEOUS MAPS, RECORDS OF SAID ORANGE COUNTY.

EXCEPTING THEREFROM, ALL OF THE UNITS AS SHOWN ON THE PLAN.

ALSO EXCEPTING ALL OIL, OIL RIGHTS, MINERALS, MINERAL RIGHTS, NATURAL GAS RIGHTS
AND OTHER HYDROCARBONS BY WHATSOEVER NAME KNOWN, GEOTHERMAL STEAM AND ALL
PRODUCTS DERIVED FROM ANY OF THE FOREGOING, THAT MAY BE WITHIN OR UNDER THE
PARCEL OF LAND HEREINABOVE DESCRIBED, TOGETHER WITH THE PERPETUAL RIGHT OF
DRILLING, MINING, EXPLORING AND OPERATING THEREFOR AND STORING IN AND REMOVING
THE SAME FROM SAID LAND OR ANY OTHER LAND, INCLUDING THE RIGHT TO WHIPSTOCK OR
DIRECTIONALLY DRILL AND MINE FROM LANDS OTHER THAN THOSE HEREINABOVE DESCRIBED,
OIL OR GAS WELLS, TUNNELS AND SHAFTS INTO, THROUGH OR ACROSS THE SUBSURFACE OF
THE LAND HEREINABOVE DESCRIBED, AND TO BOTTOM SUCH WHIPSTOCKED OR DIRECTIONALLY
DRILLED WELLS, TUNNELS AND SHAFTS UNDER AND BENEATH OR BEYOND THE EXTERIOR
LIMITS THEREOF, AND TO REDRILL, RETUNNEL, EQUIP, MAINTAIN, REPAIR, DEEPEN AND
OPERATE ANY SUCH WELLS OR MINES WITHOUT, HOWEVER, THE RIGHT TO DRILL, MINE,
STORE, EXPLORE OR OPERATE THROUGH THE SURFACE OR THE UPPER 500 FEET OF THE
SUBSURFACE OF THE LAND HEREINABOVE DESCRIBED, AS RESERVED BY THE IRVINE COMPANY
IN DEED RECORDED JULY 21, 1988 AS INSTRUMENT NO. 88-353759 OF OFFICIAL RECORDS.

ALSO EXCEPTING THEREFROM ANY AND ALL WATER, WATER RIGHTS OR INTERESTS THEREIN
APPURTENANT OR RELATING TO THE LAND OR OWNED OR USED BY GRANTOR IN CONNECTION
WITH OR WITH RESPECT TO THE LAND (NO MATTER HOW ACQUIRED BY GRANTOR) WHETHER
SUCH WATER RIGHTS SHALL BE RIPARIAN, OVERLYING, APROPRIATIVE, LITTORAL,
PERCOLATING, PRESCRIPTIVE, ADJUDICATED, STATUTORY OR CONTRACTUAL, TOGETHER WITH
THE RIGHT AND POWER TO EXPLORE, DRILL, REDRILL, REMOVE AND STORE THE SAME FROM
OR IN THE LAND OR TO DIVERT OR OTHERWISE UTILIZE SUCH WATER, RIGHTS OR <'ITS ON
ANY OTHER PROPERTY OWNED OR LEASED BY GRANTOR; BUT WITHOUT, HOWEVER, ANY RIGHT
TO ENTER UPON THE SURFACE OF THE LAND IN THE EXERCISE OF SUCH RIGHTS, AS
RESERVED BY THE IRVINE COMPANY, A MICHIGAN CORPORATION IN THE DEED RECORDED JULY
21, 1988 AS INSTRUMENT NO. 88-353759 OF OFFICIAL RECORDS.

PARCEL 3:

NON-EXCLUSIVE EASEMENTS FOR ACCESS, INGRESS, EGRESS, USE, ENJOYMENT, DRAINAGE,
ENCROACHMENT, MAINTENANCE, REPAIRS, AND FOR OTHER PURPOSES, ALL AS MAY BE SHOWN
IN THE PLAN, AND AS ARE DESCRIBED IN THE MASTER DECLARATION OF COVENANTS,
CONDITIONS AND RESTRICITONS, AND RESERVATION OF EASEMENTS FOR TUSTIN RANCH
COMMUNITY ASSOCIATION II (MASTER DECLARATION OF COVENANTS, CONDITIONS AND

Branch :OBS , User :DBRO

Page   2
Order No. 38572731

### DESCRIPTION

RESTRICTIONS, AND RESERVATION OF EASEMENTS FOR TUSTIN RANCH COMMUNITY
ASSOCIATION II (MASTER DECLARATION), RECORDED AUGUST 1, 1990 AS INSTRUMENT NO.
90-408228 OF OFFICIAL RECORDS OF ORANGE COUNTY, CALIFORNIA.

PARCEL 4:

EXCLUSIVE EASEMENTS APPURTENANT TO PARCELS 1 AND 2 DESCRIBED ABOVE FOR REAR YARD
PURPOSES OVER THE AREA SHOWN AND ASSIGNED ON EXHIBIT "D" TO THE DECLARATION AND
DESCRIBED AS AN EXCLUSIVE USE COMMON AREA IN THE DECLARATION.

PARCEL 5:

EXCLUSIVE EASEMENTS APPURTENANT TO PARCELS 1 AND 2 DESCRIBED ABOVE FOR DECK
PURPOSES, AS SHOWN AND ASSIGNED IN THE PLAN AND DESCRIBED AS AN EXCLUSIVE USE
COMMON AREA IN THE NOTICE.

# EXHIBIT 2

Prepared by: MILES EVALLE

LOAN #: 37886917

# InterestOnly$^{SM}$ ADJUSTABLE RATE NOTE
## (One-Year **LIBOR** Index (As Published in *The Wall Street Journal*) - Rate Caps)

**THIS NOTE CONTAINS PROVISIONS ALLOWING FOR A CHANGE IN MY FIXED INTEREST RATE TO AN ADJUSTABLE INTEREST RATE AND FOR CHANGES IN MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY ADJUSTABLE INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.**

| SEPTEMBER 19, 2003 | BREA | CALIFORNIA |
|---|---|---|
| [Date] | [City] | [State] |

2495 TEQUESTRA #18, TUSTIN, CA 92782
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 395,200.00 (this amount is called "Principal"), plus interest, to the order of Lender. Lender is
COUNTRYWIDE HOME LOANS, INC.
I will make all payments under this Note in the form of cash, check or money order.

I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of   5.375  %. The interest rate I will pay may change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will make a payment on the  first  day of every month, beginning on  NOVEMBER 01, 2003 Before the First Principal and Interest Payment Due Date as described in Section 4 of this Note, my payment will consist only of the interest due on the unpaid principal balance of this Note. Thereafter, I will pay principal and interest by making a payment every month as provided below.

I will make my monthly payments of principal and interest beginning on the First Principal and Interest Payment Due Date as described in Section 4 of this Note. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date, and if the payment includes both principal and interest, it will be applied to interest before Principal. If, on   OCTOBER 01, 2033    , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at
P.O. Box 10219, Van Nuys, CA 91410-0219
or at a different place if required by the Note Holder.

### (B) Amount of My Initial Monthly Payments

My monthly payment will be in the amount of U.S. $ 1,770.17 before the First Principal and Interest Payment Due Date, and thereafter will be in an amount sufficient to repay the principal and interest at the rate determined as described in Section 4 of this Note in substantially equal installments by the Maturity Date. The Note Holder will notify me prior to the date of change in monthly payment.

### (C) Monthly Payment Changes

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 or 5 of this Note.

CONV
● MULTISTATE Interest Only ADJUSTABLE RATE NOTE - ONE YEAR LIBOR INDEX
2D805-XX (04/03)(d)                                        Page 1 of 4

Initials: 


610  037886917  NTE  001  001

LOAN #: 37886917

## 4. ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES

### (A) Change Dates

The initial fixed interest rate I will pay will change to an adjustable interest rate on the `first` day of OCTOBER, 2013 , and the adjustable interest rate I will pay may change on that day every 12th month thereafter. The date on which my initial fixed interest rate changes to an adjustable interest rate, and each date on which my adjustable interest rate could change, is called a "Change Date."

### (B) The Index

Beginning with the first Change Date, my adjustable interest rate will be based on an Index. The "Index" is the average of interbank offered rates for one-year U.S. dollar-denominated deposits in the London market (LIBOR), as published in *The Wall Street Journal*. The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

### (C) Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding TWO & ONE-QUARTER percentage points ( 2.250 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

### (D) Limits on Interest Rate Changes

The interest rate I am required to pay at the first Change Date will not be greater than 10.375 % or less than 2.250 %. Thereafter, my adjustable interest rate will never be increased or decreased on any single Change Date by more than two percentage points from the rate of interest I have been paying for the preceding 12 months. My interest rate will never be greater than 10.375 %.

### (E) Effective Date of Changes

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

### (F) Notice of Changes

Before the effective date of any change in my interest rate and/or monthly payment, the Note Holder will deliver or mail to me a notice of such change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

### (G) Date of First Principal and Interest Payment

The date of my first payment consisting of both principal and interest on this Note (the "First Principal and Interest Payment Due Date") shall be the first monthly payment date after the first Change Date.

## 5. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note.

I may make a full Prepayment or partial Prepayments without paying any Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date of my monthly payments unless the Note Holder agrees in writing to those changes. If the partial Prepayment is made during the period when my monthly payments consist only of interest, the amount of the monthly payment will decrease for the remainder of the term when my payments consist of only interest. If the partial Prepayment is made during the period when my payments consist of principal and interest, my partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

## 6. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 7. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of FIFTEEN calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.000 % of my overdue payment of interest, during the period when my payment is interest only, and of principal and interest thereafter. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

LOAN #: 37886917

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**8.  GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**9.  OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**10.  WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**11.  UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions read as follows:

(A)  Until my initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section 4 above, Uniform Covenant 18 of the Security Instrument shall read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any interest in it is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

(B)  When my initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section 4 above, Uniform Covenant 18 of the Security Instrument described in Section 11(A) above shall then cease to be in effect, and Uniform Covenant 18 of the Security Instrument shall instead read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

LOAN #: 37886917

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)
HANS NEARHOOF                                    -Borrower

_____ (Seal)
                                                 -Borrower

_____ (Seal)
                                                 -Borrower

_____ (Seal)
                                                 -Borrower

PAY TO THE ORDER OF                          [Sign Original Only]

WITHOUT RECOURSE
COUNTRYWIDE HOME LOANS, INC.

BY _____
        David A. Spector
        Managing Director

# EXHIBIT 3

Recording Requested By:
**Bank of America**
Prepared By: **Bank of America**
**1800 Tapo Canyon Road**
**Simi Valley, CA 93063**
**800-444-4302**
When recorded mail to:
**CoreLogic**
**450 E. Boundary St.**
**Attn: Release Dept.**
**Chapin, SC 29036**

DocID# 8713788691790656

Property Address:
**2495 Tequestra Unit 18**
**Tustin, CA 92782-1155**
CA0-ADT 18867709          6/18/2012

**Recorded in Official Records, Orange County**
**Tom Daly, Clerk-Recorder**

12.00

* $ R 0 0 0 4 9 1 9 2 0 5 $ *
2012000359620 8:31 am 06/26/12
62 417 A32   2
0.00 0.00 0.00 0.00 3.00 0.00 0.00 0.00

This space for Recorder's use

MIN #: 1000157-0002913365-5          MERS Phone #: 888-679-6377

## ASSIGNMENT OF DEED OF TRUST

For Value Received, the undersigned holder of a Deed of Trust (herein "Assignor") whose address is **1901 E Voorhees Street, Suite C, Danville, IL 61834** does hereby grant, sell, assign, transfer and convey unto **THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF CWMBS, INC., CHL MORTGAGE PASS-THROUGH TRUST 2003-56, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2003-56** whose address is **C/O BAC, M/C: CA6-914-01-43, 1800 Tapo Canyon Road, Simi Valley, CA 93063** all beneficial interest under that certain Deed of Trust described below together with the note(s) and obligations therein described and the money due and to become due thereon with interest and all rights accrued or to accrue under said Deed of Trust.

Original Lender:            **COUNTRYWIDE HOME LOANS, INC.**
Original Borrower(s):       **HANS NEARHOOF, A SINGLE MAN**
Original Trustee:           **CTC REAL ESTATE SERVICES, A CALIFORNIA CORPORATION**
Date of Deed of Trust:      **9/19/2003**
Original Loan Amount:       **$395,200.00**

Recorded in Orange County, CA on: **9/25/2009**, book **N/A**, page **N/A** and instrument number **2003001177810**

IN WITNESS WHEREOF, the undersigned has caused this Assignment of Deed of Trust to be executed on
JUN 18 2012

**MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.**

By: _____

_____Christopher Herrera_____,
_____Assistant Secretary_____

State of **California**
County of **Ventura**

On ___JUN 1 8 2012___ before me, __Norma Rojas_____, Notary Public, personally appeared

_____Christopher Herrera_____

, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity (ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

**I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.**

WITNESS my hand and official seal.

Notary Public: _____ *Norma Rojas*
My Commission Expires: _____ *Feb 14, 2015*    (Seal)

NORMA ROJAS
Commission # 1925662
Notary Public - California
Ventura County
My Comm. Expires Feb 14, 2015

DocID#      8713788691790656

# EXHIBIT 4

Recording Requested By:
**Title 365**

| | |
|---|---|
| at | **Orange** | County Recorder |

**2015000012135**    **01/13/2015**

has not been compared with original.
Original will be returned when process
has been completed.

When Recorded Mail To:

Fee: **21.00**    DTT    **0.00**    Total    **21.00**

**VERIPRISE PROCESSING SOLUTIONS LLC**
**750 Hwy 121 BYP STE 100**
**Lewisville, TX 75067**

APN:              934-08-434
Property Address: 2495 TEQUESTRA #18
                  TUSTIN, CA
                  92782

TS No. :     **CA1400264377**
TSG No. :    **730-1407274-70**

## NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST

ATTENTION RECORDER: THE FOLLOWING REFERENCE TO AN ATTACHED SUMMARY IS
APPLICABLE TO THE NOTICE PROVIDED TO THE TRUSTOR ONLY

- NOTE: THERE IS A SUMMARY OF THE INFORMATION IN THIS DOCUMENT ATTACHED
  注：本文件包含一个信息摘要
  참고사항: 본 첨부 문서에 정보 요약서가 있습니다
  NOTA: SE ADJUNTA UN RESUMEN DE LA INFORMACIÓN DE ESTE DOCUMENTO
  TALA: MAYROONG BUOD NG IMPORMASYON SA DOKUMENTONG ITO NA NAKALAKIP
  LƯU Ý: KÈM THEO ĐÂY LÀ BẢN TRÌNH BÀY TÓM LƯỢC VỀ THÔNG TIN TRONG TÀI LIỆU NÀY

**Pursuant to California Civil Code Section 2924c(b)(1) please be advised of the following:**

### IMPORTANT NOTICE

**IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE
BEHIND IN YOUR PAYMENTS IT MAY BE SOLD WITHOUT ANY COURT
ACTION,** and you may have the legal right to bring your account into good standing by paying all of
your past due payments plus permitted costs and expenses within the time permitted by law for
reinstatement of your account, which is normally five days business days prior to the date set for the
sale of your property. No sale date may be set until approximately 90 days from the date this Notice of
Default may be recorded (which date of recordation appears on this notice).

This amount is **$38,801.87** as of **01/08/2015**, and will increase until your account becomes current.

TS No.:                    **CA1400264377**      TSG No. :    **730-1407274-70**
VA/FHA/PMI
No.:

# NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST

While your property is in foreclosure, you still must pay other obligations (such as insurance and taxes) required by your note and deed of trust or mortgage. If you fail to make future payments on the loan, pay taxes on the property, provide insurance on the property, or pay other obligations as required in the note and deed of trust or mortgage, the beneficiary or mortgagee may insist that you do so in order to reinstate your account in good standing. In addition, the beneficiary or mortgagee may require as a condition to reinstatement that you provide reliable written evidence that you paid all senior liens, property taxes, and hazard insurance premiums.

Upon your written request, the beneficiary or mortgagee will give you a written itemization of the entire amount you must pay. You may not have to pay the entire unpaid portion of your account, even though full payment was demanded, but you must pay all amounts in default at the time payment is made. However, you and your beneficiary or mortgagee may mutually agree in writing prior to the time the notice of sale is posted (which may not be earlier than three months after this notice of default is recorded) to, among other things, (1) provide additional time in which to cure the default by transfer of the property or otherwise; or (2) establish a schedule of payments in order to cure your default; or both (1) and (2).

Following the expiration of the time period referred to in the first paragraph of this notice, unless the obligation being foreclosed upon or a separate written agreement between you and your creditor permits a longer period, you have only the legal right to stop the sale of your property by paying the entire amount demanded by your creditor.

To find out the amount you must pay, or to arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason, contact:

**THE BANK OF NEW YORK MELLON, AS TRUSTEE FOR CHL MORTGAGE PASS-THROUGH TRUST 2003-56 MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2003-56 W/A/T/A THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF CWMBS, INC., CHL MORTGAGE PASS-THROUGH TRUST 2003-56,MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2003-56**

## c/o VERIPRISE PROCESSING SOLUTIONS LLC

**750 Hwy 121 BYP STE 100**
**Lewisville, TX 75067**
1855-689-3097

TS No.:          **CA1400264377**          TSG No. :    **730-1407274-70**
VA/FHA/PMI No.:

## NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST

If you have any questions, you should contact a lawyer or the governmental agency which may have insured your loan.

Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale provided the sale is concluded prior to the conclusion of the foreclosure.

## Remember, YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION.

NOTICE IS HEREBY GIVEN: That **VERIPRISE PROCESSING SOLUTIONS LLC** is either the original trustee, the duly appointed substitute trustee, or acting as agent for the trustee or beneficiary under a Deed of Trust dated **09/19/2003**, executed by:

**HANS NEARHOOF, A SINGLE MAN,**

as Trustor(s) to secure certain obligations in favor of **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR COUNTRYWIDE HOME LOANS, INC.** as Beneficiary, recorded **09/25/2003**, (as Instrument No.) **200301177810**, (in Book) NA, (Page) NA of Official Records in the Office of the Recorder of **ORANGE COUNTY, CALIFORNIA** describing land therein as:
**AS MORE FULLY DESCRIBED IN THE ABOVE MENTIONED DEED OF TRUST**

said obligations including ONE NOTE FOR THE ORIGINAL sum of **$395,200.00**.

That a breach of, and default in, the obligations for which such Deed of Trust is security has occurred in that payment has not been made of:

**THE INSTALLMENT OF PRINCIPAL AND INTEREST WHICH BECAME DUE ON 5/1/2014 AND ALL SUBSEQUENT INSTALLMENTS, TOGETHER WITH LATE CHARGES AS SET FORTH IN SAID NOTE AND DEED OF TRUST, ADVANCES, ASSESSMENTS, FEES, AND/OR TRUSTEE FEES. NOTHING IN THIS NOTICE SHALL BE CONSTRUED AS A WAIVER OF ANY FEES OWING TO THE BENEFICIARY UNDER THE DEED OF TRUST, PURSUANT TO THE TERMS OF THE LOAN DOCUMENTS.**

TS No.:          **CA1400264377**          TSG No. :   **730-1407274-70**
VA/FHA/PMI No.:

## NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST

That by reason thereof, the present beneficiary under such deed of trust, has deposited with
said agent such deed of trust and all documents evidencing obligations secured thereby, and has
declared and does hereby declare all sums secured thereby immediately due and payable and has
elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured
thereby.

Dated:  *1.9.15*

**VERIPRISE PROCESSING SOLUTIONS LLC**

By: _____
                    (signature)
Name: _____
Title: _____

**VERIPRISE PROCESSING SOLUTIONS LLC IS A DEBT COLLECTOR
ATTEMPTING TO COLLECT A DEBT. ANY INFORMATION OBTAINED WILL BE
USED FOR THAT PURPOSE.**

See Attached Declaration

(Page 1 of 1)

## Declaration of Mortgage Servicer Pursuant to
## Civil Code §2923.55(c)

Borrower(s): HANS NEARHOOF
Mortgage Servicer: Nationstar Mortgage LLC
Property Address: 2495 TEQUESTRA 18 TUSTIN CA 92782
T.S. No.:

The undersigned, as an authorized agent or employee of the mortgage servicer named below, declares that:

1. ☒ The mortgage servicer has contacted the borrower pursuant to California Civil Code §2923.55(b)(2) to "assess the borrower's financial situation and explore options for the borrower to avoid foreclosure". Thirty (30) days, or more, have passed since the initial contact was made.

2. ☐ The mortgage servicer has tried with due diligence to contact the borrower as required by California Civil Code §2923.55(f), but has not made contact despite such due diligence. Thirty (30) days, or more, have passed since these due diligence efforts were satisfied.

3. ☐ No contact was required by the mortgage servicer because the individual(s) identified above did not meet the definition of "borrower" pursuant to subdivision (c) of California Civil Code §2920.5.

   ☐ An individual who has surrendered the secured property as evidenced by either a letter confirming the surrender or delivery of the keys to the property to the mortgagee, beneficiary, or authorized agent.

   ☐ An individual who has contracted with an organization, person, or entity whose primary business is advising people who have decided to leave their homes on how to extend the foreclosure process and avoid their contractual obligations to mortgagees or beneficiaries.

   ☐ An individual who has filed a case under Chapter 7, 11, 12, or 13 of Title 11 of the United States Code and the bankruptcy court has not entered an order closing or dismissing the bankruptcy case, or granting relief from a stay of foreclosure.

4. ☐ The requirements of California Civil Code §2923.55 do not apply because the loan encumbering the above-referenced property is not secured by a first lien mortgage or first lien deed of trust that secures a loan, or that encumbers real property, described in California Civil Code §2924.15(a).

I certify that this declaration is accurate, complete and supported by competent and reliable evidence which the mortgage servicer has reviewed to substantiate the borrower's default and the right to foreclose, including the borrower's loan status and loan information.

Nationstar Mortgage LLC
Mortgage Servicer

Dated: 7/29/14

By: _____ 7/29/14
Name (Print): _____ Assistant Secretary

# EXHIBIT 5

**Recorded in Official Records, Orange County**
**Hugh Nguyen, Clerk-Recorder**

|||||||||||||||||||||||||| 12.00
* $ R 0 0 0 9 2 8 2 4 4 4 $ *
**2017000204670 8:00 am 05/19/17**
65 401 N34 F13 2
0.00 0.00 0.00 0.00 3.00 0.00 0.00 0.00

Recording requested by:
**TITLE 365**

When Recorded Mail To:
**BARRETT DAFFIN FRAPPIER TREDER &**
**WEISS, LLP**
**4004 Belt Line Road, Suite 100**
**Addison, Texas 75001-4320**
**(866) 795-1852**

APN #: 934-08-434
Property Address:
**2495 TEQUESTRA #18**
**TUSTIN, CALIFORNIA 92782**

|||||||||||||||||||||||||||||
NOTS00000005436415

Space above this line for Recorder's use only

Trustee Sale No. : 00000005436415      Title Order No.: 730-1505170-70      FHA/VA/PMI No.:

## NOTICE OF TRUSTEE'S SALE

<u>ATTENTION RECORDER:</u> THE FOLLOWING REFERENCE TO AN ATTACHED SUMMARY APPLIES ONLY TO COPIES PROVIDED TO THE TRUSTOR, NOT TO THIS RECORDED ORIGINAL NOTICE.

### NOTE: THERE IS A SUMMARY OF THE INFORMATION IN THIS DOCUMENT ATTACHED

注：本文件包含一个信息摘要
참고사항: 본 첨부 문서에 정보 요약서가 있습니다
NOTA: SE ADJUNTA UN RESUMEN DE LA INFORMACIÓN DE ESTE DOCUMENTO
TALA: MAYROONG BUOD NG IMPORMASYON SA DOKUMENTONG ITO NA NAKALAKIP
LƯU Ý: KÈM THEO ĐÂY LÀ BẢN TRÌNH BÀY TÓM LƯỢC VỀ THÔNG TIN TRONG TÀI
LIỆU NÀY

**YOU ARE IN DEFAULT UNDER A DEED OF TRUST, DATED 09/19/2003. UNLESS YOU TAKE ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE. IF YOU NEED AN EXPLANATION OF THE NATURE OF THE PROCEEDING AGAINST YOU, YOU SHOULD CONTACT A LAWYER.**

**BARRETT DAFFIN FRAPPIER TREDER & WEISS, LLP,** as duly appointed Trustee under and pursuant to Deed of Trust **Recorded on 09/25/2003 as Instrument No. 2003001177810** of official records in the office of the County Recorder of **ORANGE** County, State of CALIFORNIA.
**EXECUTED BY: HANS NEARHOOF, A SINGLE MAN,**
WILL SELL AT PUBLIC AUCTION TO HIGHEST BIDDER FOR CASH, CASHIER'S CHECK/CASH EQUIVALENT or other form of payment authorized by California Civil Code 2924h(b), (payable at time of sale in lawful money of the United States).
**DATE OF SALE:      06/27/2017      TIME OF SALE:      12:00 PM**
**PLACE OF SALE:      At the North front entrance to the County Courthouse, 700 Civic Center Drive West, Santa Ana, CA 92701**

**STREET ADDRESS** and other common designation, if any, of the real property described above is purported to be:
**2495 TEQUESTRA #18, TUSTIN, CALIFORNIA 92782**
**APN#:      934-08-434**

The undersigned Trustee disclaims any liability for any incorrectness of the street address and other common

FCUS_NoticeOfTrusteeSale.rpt - Record - 04/01/2016 - Ver-39

**Page 1 of 2**

Trustee Sale No. : 00000005436415      Title Order No.: **730-1505170-70**      FHA/VA/PMI No.:

designation, if any, shown herein. Said sale will be made, but without covenant or warranty, expressed or implied, regarding title, possession, or encumbrances, to pay the remaining principal sum of the note(s) secured by said Deed of Trust, with interest thereon, as provided in said note(s), advances, under the terms of said Deed of Trust, fees, charges and expenses of the Trustee and of the trusts created by said Deed of Trust. The total amount of the unpaid balance of the obligation secured by the property to be sold and reasonable estimated costs, expenses and advances at the time of the initial publication of the Notice of Sale is **$601,083.32**. The beneficiary under said Deed of Trust heretofore executed and delivered to the undersigned a written Declaration of Default and Demand for Sale, and a written Notice of Default and Election to Sell. The undersigned caused said Notice of Default and Election to Sell to be recorded in the county where the real property is located.

**NOTICE TO POTENTIAL BIDDERS:** If you are considering bidding on this property lien, you should understand that there are risks involved in bidding at a trustee auction. You will be bidding on a lien, not on the property itself. Placing the highest bid at a trustee auction does not automatically entitle you to free and clear ownership of the property. You should also be aware that the lien being auctioned off may be a junior lien. If you are the highest bidder at the auction, you are or may be responsible for paying off all liens senior to the lien being auctioned off, before you can receive clear title to the property. You are encouraged to investigate the existence, priority, and size of outstanding liens that may exist on this property by contacting the county recorder's office or a title insurance company, either of which may charge you a fee for this information. If you consult either of these resources, you should be aware that the same lender may hold more than one mortgage or deed of trust on the property.

**NOTICE TO PROPERTY OWNER:** The sale date shown on this notice of sale may be postponed one or more times by the mortgagee, beneficiary, trustee, or a court, pursuant to Section 2924g of the California Civil Code. The law requires that information about trustee sale postponements be made available to you and to the public, as a courtesy to those not present at the sale. If you wish to learn whether your sale date has been postponed, and, if applicable, the rescheduled time and date for the sale of this property, you may call 800-758-8052 for information regarding the trustee's sale or visit this Internet Web site www.homesearch.com for information regarding the sale of this property, using the file number assigned to this case 00000005436415. Information about postponements that are very short in duration or that occur close in time to the scheduled sale may not immediately be reflected in the telephone information or on the Internet Web site. The best way to verify postponement information is to attend the scheduled sale.

FOR TRUSTEE SALE INFORMATION PLEASE CALL:
**XOME**
**800-758-8052**
**www.homesearch.com**

**BARRETT DAFFIN FRAPPIER TREDER & WEISS, LLP IS ACTING AS A DEBT COLLECTOR ATTEMPTING TO COLLECT A DEBT. ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**

**BARRETT DAFFIN FRAPPIER TREDER & WEISS, LLP as Trustee**
**20955 Pathfinder Road, Suite 300**
**Diamond Bar, CA 91765**
**(866) 795-1852**

_____   Dated: **05/16/2017**
BY: Manuel Loeza

Manuel Loeza
Foreclosure Specialist

FCUS_NoticeOfTrusteeSale.rpt - Record - 04/01/2016 - Ver-39

# EXHIBIT 6

RECORDING REQUESTED BY:

_____

AND WHEN RECORDED MAIL TO:

NAME      EASTWOOD GROUP

STREET    *4790 Irvine Blvd*
ADDRESS   *Ste 105 132*

CITY      *Irvine*
STATE     CALIFORNIA
ZIP       *92620*

**Recorded in Official Records, Orange County
Hugh Nguyen, Clerk-Recorder**

||||||||||||||||||||||||||||  15.00
* $ R 0 0 0 8 3 1 0 7 6 4 $ *
**2016000170814** 3:21 pm 04/19/16
276 415 G02 F13   3
0.00 0.00 0.00 0.00 6.00 0.00 0.00 0.00

THIS SPACE FOR RECORDER'S USE ONLY

## GRANT DEED

The undersigned Grantor(s) declare(s) that          A.P.N.:934-08-434

the DOCUMENTARY TRANSFER TAX IS $_____
___ computed on the full value of the interest
    of property, or
___ computed on the full value less the value of liens
    or encumbrances remaining thereon at the time of sale
OR transfer is exempt from tax.

FOR A VALUABLE CONSIDERATION, receipt of which is hereby acknowledged,
HANS NEARHOOF, A Single man
hereby GRANT(S) to
EASTWOOD GROUP LLC, A LIMITED LIABILITY COMPANY

The following described real property located in the CITY OF TUSTIN
          (name of city or unincorporated area)
County of ORANGE, State of California, described as:

LEGAL DESCRIPTION ATTACHED HERETO AS EXHIBIT "A" AND MADE A PART HEREOF Also Known as: 2495
Tequestra, Tustin, CA 92782

Dated  *4/19/2016*

STATE OF CALIFORNIA              )
_____ ) ss
COUNTY OF____*Orange*_____ )

On *4/19/16* before me *Kevin Cannon Notary Public*

personally appeared *Hans Nearhoof —*

_____

personally known to me (or proved to me on
the basis of satisfactory evidence) to be the
person(s) whose name(s) is/are subscribed to
the within instrument, and acknowledged to me
that he/she/they executed the same in his/her/
their authorized capacity(ies), and that by
his/her/their signature(s) on the instrument
the person(s) or the entity upon behalf of
which the person(s) acted, executed the
instrument.
I certify under penalty of perjury under the
Laws of the State of California that the foregoing
Paragraph is true and correct.

WITNESS my hand and official seal.

HANS NEARHOOF

KEVIN CANNON
COMM...2134843
NOTARY PUBLIC-CALIFORNIA
ORANGE COUNTY
My Term Exp. Dec. 15, 2019

(This area for official notary seal)

Signature

Branch :A14,User :2004                   Comment:                        Station Id :GRX0

EXHIBIT "A"

DESCRIPTION

Page   1
Order No. 38572731

PARCEL 1:

UNIT NO. 18, IN THE CITY OF TUSTIN, COUNTY OF ORANGE, STATE OF CALIFORNIA,
CONSISTING OF CERTAIN AIRSPACE AND SURFACE ELEMENTS, AS SHOWN AND DESCRIBED IN
THE CONDOMINIUM PLAN (PLAN) FOR PHASE 1 OF CORTE VILLA, WHICH PLAN WAS RECORDED
OCTOBER 25, 1990 AS INSTRUMENT NO. 90-568251 OF OFFICIAL RECORDS OF ORANGE
COUNTY, CALIFORNIA.

PARCEL 2:

AN UNDIVIDED ONE/TWENTY-EIGHTH (1/28TH) FEE SIMPLE INTEREST AS A TENANT IN
COMMON IN AND TO ALL OF THE REAL PROPERTY, INCLUDING WITHOUT LIMITATION THE
COMMON AREA DEFINED IN THE DECLARATION OF COVENANTS, CONDITIONS AND RESTRICTIONS
AND RESERVATION OF EASEMENTS FOR CORTE VILLA (DECLARATION), RECORDED OCTOBER 25,
1990 AS INSTRUMENT NO. 90-568250 OF OFFICIAL RECORDS OF ORANGE COUNTY,
CALIFORNIA, IN LOT 1 OF TRACT NO. 13796, AS SHOWN ON A MAP RECORDED IN BOOK 650,
PAGES 43 TO 47 INCLUSIVE OF MISCELLANEOUS MAPS, RECORDS OF SAID ORANGE COUNTY.

EXCEPTING THEREFROM, ALL THE UNITS AS SHOWN ON THE PLAN.

ALSO EXCEPTING ALL OIL, OIL RIGHTS, MINERALS, MINERAL RIGHTS, NATURAL GAS RIGHTS
AND OTHER HYDROCARBONS BY WHATSOEVER NAME KNOWN, GEOTHERMAL STEAM AND ALL
PRODUCTS DERIVED FROM ANY OF THE FOREGOING, THAT MAY BE WITHIN OR UNDER THE
PARCEL OF LAND HEREINABOVE DESCRIBED, TOGETHER WITH THE PERPETUAL RIGHT OF
DRILLING, MINING, EXPLORING AND OPERATING THEREFOR AND STORING IN AND REMOVING
THE SAME FROM SAID LAND OR ANY OTHER LAND, INCLUDING THE RIGHT TO WHIPSTOCK OR
DIRECTIONALLY DRILL AND MINE FROM LANDS OTHER THAN THOSE HEREINABOVE DESCRIBED,
OIL OR GAS WELLS, TUNNELS AND SHAFTS INTO, THROUGH OR ACROSS THE SUBSURFACE OF
THE LAND HEREINABOVE DESCRIBED, AND TO BOTTOM SUCH WHIPSTOCKED OR DIRECTIONALLY
DRILLED WELLS, TUNNELS AND SHAFTS UNDER AND BENEATH OR BEYOND THE EXTERIOR
LIMITS THEREOF, AND TO REDRILL, RETUNNEL, EQUIP, MAINTAIN, REPAIR, DEEPEN AND
OPERATE ANY SUCH WELLS OR MINES WITHOUT, HOWEVER, THE RIGHT TO DRILL, MINE,
STORE, EXPLORE OR OPERATE THROUGH THE SURFACE OR THE UPPER 500 FEET OF THE
SUBSURFACE OF THE LAND HEREINABOVE DESCRIBED, AS RESERVED BY THE IRVINE COMPANY
IN DEED RECORDED JULY 21, 1988 AS INSTRUMENT NO. 88-353759 OF OFFICIAL RECORDS.

ALSO EXCEPTING THEREFROM ANY AND ALL WATER, WATER RIGHTS OR INTERESTS THEREIN
APPURTENANT OR RELATING TO THE LAND OR OWNED OR USED BY GRANTOR IN CONNECTION
WITH OR WITH RESPECT TO THE LAND (NO MATTER HOW ACQUIRED BY GRANTOR) WHETHER
SUCH WATER RIGHTS SHALL BE RIPARIAN, OVERLYING, APROPRIATIVE, LITTORAL,
PERCOLATING, PRESCRIPTIVE, ADJUDICATED, STATUTORY OR CONTRACTURAL, TOGETHER WITH
THE RIGHT AND POWER TO EXPLORE, DRILL, REDRILL, REMOVE AND STORE THE SAME FROM
OR IN THE LAND OR TO DIVERT OR OTHERWISE UTILIZE SUCH WATER, RIGHTS OR <'ITS ON
ANY OTHER PROPERTY OWNED OR LEASED BY GRANTOR; BUT WITHOUT, HOWEVER, ANY RIGHT
TO ENTER UPON THE SURFACE OF THE LAND IN THE EXERCISE OF SUCH RIGHTS, AS
RESERVED BY THE IRVINE COMPANY, A MICHIGAN CORPORATION IN THE DEED RECORDED JULY
21, 1988 AS INSTRUMENT NO. 88-353759 OF OFFICIAL RECORDS.

PARCEL 3:

NON-EXCLUSIVE EASEMENTS FOR ACCESS, INGRESS, EGRESS, USE, ENJOYMENT, DRAINAGE,
ENCROACHMENT, MAINTENANCE, REPAIRS, AND FOR OTHER PURPOSES, ALL AS MAY BE SHOWN
IN THE PLAN, AND AS ARE DESCRIBED IN THE MASTER DECLARATION OF COVENANTS,
CONDITIONS AND RESTRICITONS, AND RESERVATION OF EASEMENTS FOR TUSTIN RANCH
COMMUNITY ASSOCIATION II (MASTER DECLARATION OF COVENANTS, CONDITIONS AND

ORANGE,CA                          Page 3 of 4                    Printed on 4/15/2016 4:03:08 PM
Document: DD 2003.1177809

Branch :A14,User :2004                    Comment:                                    Station Id :GRX0

Page   2                              DESCRIPTION
Order No. 38572731

RESTRICTIONS, AND RESERVATION OF EASEMENTS FOR TUSTIN RANCH COMMUNITY
ASSOCIATION II (MASTER DECLARATION), RECORDED AUGUST 1, 1990 AS INSTRUMENT NO.
90-408228 OF OFFICIAL RECORDS OF ORANGE COUNTY, CALIFORNIA.

PARCEL 4:

EXCLUSIVE EASEMENTS APPURTENANT TO PARCELS 1 AND 2 DESCRIBED ABOVE FOR REAR YARD
PURPOSES OVER THE AREA SHOWN AND ASSIGNED ON EXHIBIT "D" TO THE DECLARATION AND
DESCRIBED AS AN EXCLUSIVE USE COMMON AREA IN THE DECLARATION.

PARCEL 5:

EXCLUSIVE EASEMENTS APPURTENANT TO PARCELS 1 AND 2 DESCRIBED ABOVE FOR DECK
PURPOSES, AS SHOWN AND ASSIGNED IN THE PLAN AND DESCRIBED AS AN EXCLUSIVE USE
COMMON AREA IN THE NOTICE.

*Grantors and Grantees in This Conveyance Continue to hold
The same proportionate ownership Interest in This property
R§T 11923(cd).*

# EXHIBIT 7

RECORDING REQUESTED BY

AND WHEN RECORDED MAIL THIS DEED AND, UNLESS OTHERWISE
SHOWN BELOW, MAIL TAX STATEMENT TO:

Name   Hans Nearhoof
Street   2495 Tequestra
Address  Tustin CA 92782

City &
State
Zip

Title Order No.     Escrow No.

Recorded in Official Records, Orange County

* S R 0 0 0 9 5 9 7 3 0 9 $ *
2017000415096 9:51 am 09/29/17
47 NC-5 G02 F13   3
0.00 0.00 0.00 0.00 6.00 0.00 0.00 0.00

15.00

SPACE ABOVE THIS LINE FOR RECORDER'S USE

## Grant Deed

THE UNDERSIGNED GRANTOR (S) DECLARE (S)                        APN: 934-084-34

DOCUMENTARY TRANSFER TAX IS $ ⊘

☐ unincorporated area    City of  Tustin

☒ computed on full value of interest or property conveyed, or
☐ computed on full value less value of liens or encumbrances remaining at time of sale, and

FOR A VALUABLE CONSIDERATION, receipt of which is hereby acknowledged,

EASTWOOD GROUP, LLC   A LIMITED LIABILITY COMPANY

hereby GRANT(S) to

HANS NEARHOOF, A Single man

the following described real property in the City of Tustin

> This document is being recorded
> as an accommodation only
> and Chicago Title Company
> assumes no responsibility for
> correctness or validity thereof.

County of  Orange County         , state of California

LEGAL DISCRIPTION ATTACHED HERETO AS EXHIBIT "A" AND MADE A PART HEREOF
Also Known as:

2495 TEQUESTRA, TUSTIN, CA 92782

HANS NEARHOOF, AUTHORIZED SIGNATORY
EASTWOOD GROUP, LLC. A Limited Liability Company
Dated September 21, 2017

"The grantors and the grantees in this conveyance
are comprised of the same parties who continue to hold the same
proportionate interest in the property, R & T 11923(d)."

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the
document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA
COUNTY OF Orange

On   9/21/17        before me,  Justin Thomas, Notary Public
                                           (here insert name and title of the officer)

,notary public, personally appeared  Hans Nearhoof

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within
instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by
his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the
instrument.

I certify under PENALTY OF PERJURY under the laws of the state of
California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal

Signature

JUSTIN THOMAS
COMM. # 2055512
NOTARY PUBLIC - CALIFORNIA
ORANGE COUNTY
COMM. EXPIRES FEB. 13, 2018

(This area for official notarial seal)

MAIL TAX STATEMENTS TO PARTY SHOWN ON FOLLOWING LINE; IF NO PARTY SHOWN, MAIL AS DIRECTED ABOVE

Name                              Street Address                      City, State & Zip

Branch :A14,User :2004                              Comment:                              Station Id :GRX0

EXHIBIT "A"

Page   1                              DESCRIPTION
Order No. 38572731
PARCEL 1:

UNIT NO. 18, IN THE CITY OF TUSTIN, COUNTY OF ORANGE, STATE OF CALIFORNIA, CONSISTING OF CERTAIN AIRSPACE AND SURFACE ELEMENTS, AS SHOWN AND DESCRIBED IN THE CONDOMINIUM PLAN (PLAN) FOR PHASE 1 OF CORTE VILLA, WHICH PLAN WAS RECORDED OCTOBER 25, 1990 AS INSTRUMENT NO. 90-568251 OF OFFICIAL RECORDS OF ORANGE COUNTY, CALIFORNIA.

PARCEL 2:

AN UNDIVIDED ONE/TWENTY-EIGHTH (1/28TH) FEE SIMPLE INTEREST AS A TENANT IN COMMON IN AND TO ALL OF THE REAL PROPERTY, INCLUDING WITHOUT LIMITATION THE COMMON AREA DEFINED IN THE DECLARATION OF COVENANTS, CONDITIONS AND RESTRICTIONS AND RESERVATION OF EASEMENTS FOR CORTE VILLA (DECLARATION), RECORDED OCTOBER 25, 1990 AS INSTRUMENT NO. 90-568250 OF OFFICIAL RECORDS OF ORANGE COUNTY, CALIFORNIA, IN LOT 1 OF TRACT NO. 13796, AS SHOWN ON A MAP RECORDED IN BOOK 650, PAGES 43 TO 47 INCLUSIVE OF MISCELLANEOUS MAPS, RECORDS OF SAID ORANGE COUNTY.

EXCEPTING THEREFROM, ALL OF THE UNITS AS SHOWN ON THE PLAN.

ALSO EXCEPTING ALL OIL, OIL RIGHTS, MINERALS, MINERAL RIGHTS, NATURAL GAS RIGHTS AND OTHER HYDROCARBONS BY WHATSOEVER NAME KNOWN, GEOTHERMAL STEAM AND ALL PRODUCTS DERIVED FROM ANY OF THE FOREGOING, THAT MAY BE WITHIN OR UNDER THE PARCEL OF LAND HEREINABOVE DESCRIBED, TOGETHER WITH THE PERPEUTAL RIGHT OF DRILLING, MINING, EXPLORING AND OPERATING THEREFOR AND STORING IN AND REMOVING THE SAME FROM SAID LAND OR ANY OTHER LAND, INCLUDING THE RIGHT TO WHIPSTOCK OR DIRECTIONALLY DRILL AND MINE FROM LANDS OTHER THAN THOSE HEREINABOVE DESCRIBED, OIL OR GAS WELLS, TUNNELS AND SHAFTS INTO, THROUGH OR ACROSS THE SUBSURFACE OF THE LAND HEREINABOVE DESCRIBED, AND TO BOTTOM SUCH WHIPSTOCKED OR DIRECTIONALLY DRILLED WELLS, TUNNELS AND SHAFTS UNDER AND BENEATH OR BEYOND THE EXTERIOR LIMITS THEREOF, AND TO REDRILL, RETUNNEL, EQUIP, MAINTAIN, REPAIR, DEEPEN AND OPERATE ANY SUCH WELLS OR MINES WITHOUT, HOWEVER, THE RIGHT TO DRILL, MINE, STORE, EXPLORE OR OPERATE THROUGH THE SURFACE OR THE UPPER 500 FEET OF THE SUBSURFACE OF THE LAND HEREINABOVE DESCRIBED, AS RESERVED BY THE IRVINE COMPANY IN DEED RECORDED JULY 21, 1988 AS INSTRUMENT NO. 88-353759 OF OFFICIAL RECORDS.

ALSO EXCEPTING THEREFROM ANY AND ALL WATER, WATER RIGHTS OR INTERESTS THEREIN APPURTENANT OR RELATING TO THE LAND OR OWNED OR USED BY GRANTOR IN CONNECTION WITH OR WITH RESPECT TO THE LAND (NO MATTER HOW ACQUIRED BY GRANTOR) WHETHER SUCH WATER RIGHTS SHALL BE RIPARIAN, OVERLYING, APROPRIATIVE, LITTORAL, PERCOLATING, PRESCRIPTIVE, ADJUDICATED, STATUTORY OR CONTRACTURAL, TOGETHER WITH THE RIGHT AND POWER TO EXPLORE, DRILL, REDRILL, REMOVE AND STORE THE SAME FROM OR IN THE LAND OR TO DIVERT OR OTHERWISE UTILIZE SUCH WATER, RIGHTS OR <'ITS ON ANY OTHER PROPERTY OWNED OR LEASED BY GRANTOR; BUT WITHOUT, HOWEVER, ANY RIGHT TO ENTER UPON THE SURFACE OF THE LAND IN THE EXERCISE OF SUCH RIGHTS, AS RESERVED BY THE IRVINE COMPANY, A MICHIGAN CORPORATION IN THE DEED RECORDED JULY 21, 1988 AS INSTRUMENT NO. 88-353759 OF OFFICIAL RECORDS.

PARCEL 3:

NON-EXCLUSIVE EASEMENTS FOR ACCESS, INGRESS, EGRESS, USE, ENJOYMENT, DRAINAGE, ENCROACHMENT, MAINTENANCE, REPAIRS, AND FOR OTHER PURPOSES, ALL AS MAY BE SHOWN IN THE PLAN, AND AS ARE DESCRIBED IN THE MASTER DECLARATION OF COVENANTS, CONDITIONS AND RESTRICITONS, AND RESERVATION OF EASEMENTS FOR TUSTIN RANCH COMMUNITY ASSOCIATION II (MASTER DECLARATION OF COVENANTS, CONDITIONS AND

Page    2
Order No.  38572731

## DESCRIPTION

RESTRICTIONS, AND RESERVATION OF EASEMENTS FOR TUSTIN RANCH COMMUNITY
ASSOCIATION II (MASTER DECLARATION), RECORDED AUGUST 1, 1990 AS INSTRUMENT NO.
90-408228 OF OFFICIAL RECORDS OF ORANGE COUNTY, CALIFORNIA.

PARCEL 4:

EXCLUSIVE EASEMENTS APPURTENANT TO PARCELS 1 AND 2 DESCRIBED ABOVE FOR REAR YARD
PURPOSES OVER THE AREA SHOWN AND ASSIGNED ON EXHIBIT "D" TO THE DECLARATION AND
DESCRIBED AS AN EXCLUSIVE USE COMMON AREA IN THE DECLARATION.

PARCEL 5:

EXCLUSIVE EASEMENTS APPURTENANT TO PARCELS 1 AND 2 DESCRIBED ABOVE FOR DECK
PURPOSES, AS SHOWN AND ASSIGNED IN THE PLAN AND DESCRIBED AS AN EXCLUSIVE USE
COMMON AREA IN THE NOTICE.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is 1851 East First Street, 10th Floor, Santa Ana, CA 92705-4052.

A true and correct copy of the foregoing document entitled (*specify*):  MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR RELIEF FROM STAY AND *IN REM* ORDER  will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*)  May 24, 2018  I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page.

**2. SERVED BY UNITED STATES MAIL**:
On (*date*)  May 24, 2018 , I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

The Honorable Erithe A. Smith
U.S. Bankruptcy Court
Ronald Reagan Federal Building
411 W. Fourth Street, Suite 5040
Santa Ana, CA 92701

☒ Service information continued on attached page.

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL (state method for each person or entity served)**: Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____ , I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| May 24, 2018 | Rebecca Vogel | |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*

# F 9013-3.1.PROOF.SERVICE

**ADDITIONAL SERVICE INFORMATION** (if needed):

**1.  SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")**

| | | |
|---|---|---|
| Amrane Cohen<br>efile@ch13ac.com<br>**Chapter 13 Standing Trustee** | ustpregion16.sa.ecf@usdoj.gov<br>**United States Trustee** | Ronald A Norman, Esq.<br>ronaldanorman@sbcglobal.net<br>david@jshoffmanlaw.com<br>**Attorneys for Debtor Hans Nearhoof** |
| Dane W. Exnowski, Esq.<br>dane.exnowski@mccalla.com<br>bk.ca@mccalla.com<br>**Attorneys for HSBC Bank USA,<br>National Association, as Trustee for<br>J.P. Morgan Alternative Loan Trust<br>2006-A5** | Edward A Treder, Esq.<br>cdcaecf@bdfgroup.com<br>**Courtesy NEF** | Gilbert R Yabes, Esq.<br>ecfcacb@aldridgepite.com<br>GRY@ecf.inforuptcy.com<br>gyabes@aldridgepite.com<br>**Courtesy NEF** |

**2.  SERVED BY U.S. MAIL**

| | | |
|---|---|---|
| Department of the Treasury<br>Internal Revenue Service<br>Centralized Insolvency Operation<br>P.O. Box 7346<br>Philadelphia, PA 19101-7346 | Franchise Tax Board<br>Bankruptcy Section MS A340<br>P.O. Box 2952<br>Sacramento, CA 95812-2952 | Bayview Loan Servicing, LLC<br>4425 Ponce de Leon Blvd., 5th Floor<br>Coral Gables, FL 33146-1837 |
| Select Portfolio Servicing, Inc.<br>P.O. Box 65250<br>Salt Lake City, UT 84165-0250 | Seterus, Inc.<br>P.O. Box 1077<br>Hartford, CT 06143-1077 | |

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR E-MAIL**

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012                                   **F 9013-3.1.PROOF.SERVICE**